Let's start again with the case 19-22-86, Lubby Holdings LLC v. Chung, Mr. Chadwick. Thank you very much, your honors. May it please the court. The jury below improperly held that one, Mr. Chung was personally... Mr. Chadwick, this is Judge Wallet. In the blue brief, there's a long list of what you state are issues. For example, at issue 7, you say that it's whether the jury's verdict that 36,453 units infringe is against the clear weight of the evidence when the evidence of record is that only 8,689 units were sold after the asserted patent was issued. How is that different than issue 3, which says whether substantial evidence supports the jury's verdict that 36,453 units infringe when the evidence of record is that only 8,689 units were sold after the asserted patent had issued? My concern is a lot of this stuff seems to me to be duplicative. Am I wrong? You're not wrong, your honor, and I apologize for any confusion from the long statement of issues. That was really designed to reflect the different issues raised in the denied JMOL motion, the denied Rule 59A motion, and the denied Rule 59E motion, and to reflect the different standards of review at the district court for those different motions, even though there are overlapping issues raised in those motions. Okay. Thank you. Mr. Chadwick, in footnote 1 of the red brief, there's a reference to the fact that the corporation here was not served, and yet the judgment was entered against the corporation. That's an error that has to be corrected, right? Certain companies and entities were included at parties, but the company for which there was evidence of any sales of accusing products was not a party, and there is no judgment against that party. And that's really one concern that we have is that the individual was found liable for infringement. I understand. We can get to that in a moment. So you're saying that there was no judgment entered against Deep Vapes? My understanding is that there was a judgment against Deep Vapes, but they are not a party to this appeal and are not challenging that verdict. But they were never served, right? I am not aware, actually. I apologize. Okay. All right. Why don't you go ahead and talk about the personal liability of Mr. Chung? There were no jury instructions as to induced infringement or piercing the corporate veil. So to find Mr. Chung liable for direct infringement, there needed to be substantial evidence in the record that he personally made, sold, offered, or imported the product. He consistently testified through trial that it was his company. His company was the moving force. His company was the one that sold. His company was the one that effectuated the sales, and the only evidence of sales was by his company, Esquire Distribution, with the sales summary. So for the jury to find him personally liable is unsupported by substantial evidence, and the district court, in its order denying the JMOL and the other post-verdict motions on this point, did not identify any evidence that the jury could have relied on to find him personally liable. Beyond the infringement, there are issues with the damages verdict. First off, the damages verdict finds that sales made before the issuance of the 284 patent infringe the 284 patent. Again, the only evidence of any sales of products, of accused products, as in Appendix 1053 and 1054, the first page of that document shows all sales made during a broad time frame, and the second page shows all sales made after the issuance of the 284 patent. Well, let me ask you, was the jury instructed that they were not to consider the earlier sales? I didn't see that argument, that this was stated in the arguments to the jury, that not all of these sales could be viewed as infringing. It was discussed that even in closing argument to the jury, it was the total numbers that were argued by counsel, and I didn't see where there was some sort of clear statement and instruction that, no, you have to draw a line. Jury instruction number five states the 271A description that infringement is only during the term of the patent, but there is no instruction to really limit the damages to only post-issuance of the patent. And you're correct, Your Honor, during closing argument, Levy's counsel stated that all products infringed in violation of this 271A, but there was no corrective instruction as to limit the damages. Okay. Proceed. As I understand, Mr. Chun actually testified in the course of his testimony, was the relationship between him and his company as sole stockholder, president, whatever his title was, was that brought out before the jury? There was testimony before the jury that he was president, sole owner of the company, but, again, there was no alter ego claim made at trial, no instruction, and he consistently testified that sales went through his company, that his company ran the website, but also that his company had employees, other employees beyond him, other people that made decisions. Well, so their theory was, we've held in Word Tech and other cases, that an individual corporate officer can't be liable for acting on behalf of the corporation where there's no piercing of the corporate veil. So the question here is whether the testimony would support a conclusion that Mr. Chang acted in his personal capacity as opposed to acting as a corporate officer in making these sales. Could you address whether the record shows that he made any sales in his personal capacity? And you're right, Your Honor, that's really the only legal theory left, and there is not substantial evidence to that effect. The only evidence of sales is an Esquire distribution sales summary at Appendix 1053 and 1054, and the jury may choose to disregard his testimony that all sales go through his company. The jury may choose to disregard the existence of his company, but they cannot then conclude without evidence, without testimony, that these were therefore made personally by Mr. Chang outside the scope of his company or by himself personally. Is that forbidden or is that a question with a factual basis that the jury can weigh in terms of liability? Looking at the assets, I don't recall whether they asked whether the corporation had any assets to pay the damages or whatever else might have gone through a jury's mind. But was there any attempt by either side to join his company as a party? There was no attempt to join the company, so the company was not able to defend itself or to establish its assets and corporate formalities. How can it defend itself if it's not charged with anything? Well, precisely. You're correct, Your Honor. And there was no evidence of anything other than the company's sale of the accused products? There was evidence of sale and of ownership. Are you saying that that's no evidence or what? I'm saying there is only evidence of sales by the company and for the jury to attempt to pierce the corporate veil when, one, there was no instruction given, two, there was also in post-judgment briefing, Levy admitted that it did not pursue an alter ego theory because it believed it could find liability under an inducement theory. So for the jury to have performed some sort of ad hoc alter ego analysis to find the president and owner of Esquire liable should be reversed. Where do we find that statement in the post-trial briefing by Levy that they weren't pursuing a piercing corporate veil theory? That's going to be in their opposition to the Rule 59A motion. And that will be on appendix page 1133 where they say this issue was never raised because alter ego in piercing the corporate veil analysis is not even the correct standard by which personal liability from patent infringement was found in the context of this case. They then go on to cite international manufacturing, which of course found the officer liable for induced infringement and not for direct infringement. Okay. Beyond this, there are issues with the marking. With compliance with section 287, Chung raised this issue multiple times to the court and identified specific unmarked patented articles. There was no evidence provided at trial that there was any compliance with the marking. And yet when the jury instructions were read, he objected to the lack of 287 instruction. That was overruled by the court, raised this issue multiple times in post-verdict briefing, and still the lobby has not provided evidence that they complied with their burden under Arctic Cat. And I'd like to reserve the rest of my time for rebuttal. Any more questions for Mr. Chadwick? No. Okay. Ms. Wallach, no. Okay. Let's hear from Mr. Callaway. Thank you, Your Honor, and may it please the court. In this appeal, Mr. Chung is not counted. How could there be individual liability by Mr. Chung since there was no inducement theory, no theory of piercing the corporate veil, and we've specifically held in Word Tech and other cases that a corporate officer isn't liable personally for doing the corporation's business? Well, in this case, Your Honor, the corporation was never shown to exist. So what you effectively have is Mr. Chung's bare testimony, alibi testimony, if you will, that another actor was responsible for infringement, and yet his own testimony at Appendix 770, 763, 796, and 786 showed that he himself made the decision to infringe, that he himself told him. But the testimony says that he did it as a corporate officer, which we have specifically held is not sufficient for direct infringement liability. So the cases in which that's true involve a corporate defendant that's part of the case, and that is stipulated through the pleadings to exist and to be a party that can shield an individual from liability. But again, in this case... What evidence is there in the record that the company didn't exist? Well, there's no evidence that the company did not exist. And Mr. Chung said he made the sales for the company, right? He did say that at one point, yet at another point, Appendix 772, he was asked, can you confirm it says Conceal A, that's the infringing product, on the front page of your website? Answer, yes. On the second page, is that a sales page for Conceal A product on your website? Correct. Is that $15, the price that you sold it for on your website? Correct. And he confirms at 763 that he designed the product. He says at 786 that the sales spreadsheet at Appendix 1053 was the complete number of sales that he had done regarding Conceal A and Conceal B. Yeah, but he says repeatedly in here that he did this on behalf of the corporation. Where does he say that he did it personally and not on behalf of the corporation? He never says the words, I did it personally, but his addendum that it's on behalf of the corporation is something that the jury can believe or not believe. And on substantial evidence, the jury had multiple admissions by Mr. Chung that he sold, he offered for sale, he designed, this was on his website, independent of any action by Esquire or any umbrella of liability protection by Esquire. I'm still struggling as to where the burden of proof is on you, and there are all these statements, for example, on 769, so when the company sells it, you're selling through the company. Correct. All the promotions were done through the company. Right, and so we have to ask, can his alibi testimony in that instance transform this case where he's a defendant who's liable for his own infringement, can it transform that case into a case where a non-party is suddenly shielding him from liability? And the answer to that is no, that he was shown to infringe, the jury heard substantial evidence consistent with his infringement. They heard other evidence where he said, I did all of this on behalf of the corporation, but they were not obligated to credit that testimony. Yeah, but the problem is the burden of proof is on you to establish that he made the personal sale. And based on the sites that I read, we feel we've met that burden on substantial evidence that he sold on his own behalf, that the jury could reasonably conclude the sales were made on his own behalf. And you agree that you had to show that the sales were made on his own behalf and not for the corporation, right? I do agree with that. I will add, because we jumped right into this, that Chung waived any argument that the jury improperly pierced or that the evidence of his infringement was not sufficient. He never raised these. Wait a minute. You said in your post-trial briefing you're not relying on piercing the corporate veil. You're not relying on that here today, are you? No, no, of course. What I'm saying is that Chung waived the argument about alter ego and he waived an argument that- What does it make whether he waived the argument about alter ego? You never made an argument about alter ego. Well, he now makes the argument that he should be shielded by alter ego liability. Actually, that argument was not in his Rule 50A motion. Regarding the timing of infringing sales, again, the question of when sales were made was not raised in Chung's Rule 50A motion. So we introduced Exhibit 201, that's Appendix 1053, the sales spreadsheet, without any objection. Chung himself testified to Exhibit 1053 and testified that he had made the sales reflected on 1053. Chung's counsel never cross-examined him on that sales spreadsheet, never raised it in his case in chief, never argued about it in closing argument. This whole argument that- The problem, again, is that you have the burden of proof. Where's the proof that these sales on the first page were made before or after the patent was issued when the second page says they weren't? There's overlap, Your Honor, between Chung's sales period on that page 1053 and the patent term. So the sales spreadsheet shows 36-some-odd thousand sales between March of 16 and February of 18. Now, the patent issued September 5th of 2017. There are months of overlap, okay, between that first sales spreadsheet and the patent term. So Chung didn't object to that evidence. We argued to the jury that all those- It shows the sales made after the patent issued, right? It purports to show sales made after the patent issued. Chung argues that those sales should be subtracted from the first page, but the jury was never told that. No one ever testified to that second page. He now argues on appeal that that second page represents the only sales that were made after issuance. But, in fact, the jury never heard that. The jury saw two pages of a spreadsheet, which, you know, in interpreting that spreadsheet, you could determine that those two pages should be added to each other, that they perhaps represented sales for different regions of the country, that they represented sales of different types, what have you. What page of the appendix are these sales figures at? 1053, Your Honor, and 1054. So this is a fact issue, Your Honor, where we showed the jury, and Chung testified about that first page that shows 36,453 sales. The jury was confronted with an overlap between that sales period and the term of the patent, and... When did the patent issue? The patent issued on September 5th of 2017. Okay. So the jury... Page 1054 shows sales from September 6th, the next day, through the end of the period, right? So that's what the document says. Now, Chung would have you believe that that second page shows the only sales and all of the sales that were made after the patent issued, but these are queries to a database, and we don't know what those queries were. No one testified to them. So it would be easy for the jury to look at this and say... The sales data you relied on from page 1053 was sales data that included sales before the patent issued, right? Well, there's nothing that says that sales occurred before the patent issued. All you have is a range. March 1, 2016, which is before the patent issued, right? Right. You have a broad range of dates during which sales were made, but you have no granularity as to when sales were made in that range. So that becomes a jury question. When were those sales made? The jury could have concluded, hey, those sales were made before the patent issued. You get no damages. They, in fact, did not, and they decided that the sales were made after the patent issued. Now, on substantial evidence, the grant of JMAL is proper only where the evidence construed in the light most favorable to the nonmoving party permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict. That's not the case because you have months of overlap, I think five months of overlap, between that sales item summary at 1053 and the term of the patent, and it's a classic jury question. How many of those sales fell within the term of the patent? How many of those sales should we attribute to damages? They could have said zero, and instead they said all, and there's substantial evidence for that decision, just as there would be substantial evidence for any other breakdown of the dates of those sales because the document... In footnote one, you say that Deep Vapes was never served, yet a judgment was entered against them, correct? Not correct. We don't say... It's not my understanding that Deep Vapes was never served. We say in footnote one that another company owned by Chung, Deep Vapes Inc., DBA Boom Vaporizer, was a defendant, but... Were they served? My understanding is they were. I don't have independent knowledge of that, but they... There's nothing in the record to show that? I don't have anything at my fingertips that says they were or were not served. My understanding is they did not appear. Mr. Chung made several references in his briefing where he said, I'm not advancing the interests of Deep Vapes, you know, I'm not saying anything on behalf of Deep Vapes, so my impression was Deep Vapes no-showed, but I don't have at my fingertips the service of process on Deep Vapes. Okay. Isn't that critical to the corporate veil aspect? Well, we don't rely on any piercing of the corporate veil. Again, our theory is Chung directly infringed, and it's not the place on appeal to say, should we be piercing? WordTek was mentioned earlier, and this case is distinct from WordTek in several ways. In WordTek, the jury instructions and verdict form were so defective that this court threw out the jury's individual infringement verdicts as clear error. The verdict form in that case actually had no option for direct infringement, not so here where the jury found that Mr. Chung directly infringed. Mr. Chung jointly submitted without objection a jury instruction that charged the jury with determining whether he himself directly infringed. So right off the bat, WordTek is different. Then in WordTek, the plaintiff had two theories, both hinging on specific jury findings for which there were no instructions. First, that the corporate defendant was nonexistent during the alleged infringement because it neglected to file annual statements. There was no instruction on that, so the jury was rudderless in determining that fact pattern. And second, the second plaintiff's theory in WordTek was that even if the corporate defendant was a valid corporation, the jury had heard substantial evidence that supported piercing the veil. Now, parenthetically, we don't think that to the extent... We don't think it's correct to instruct a jury on piercing the veil because that's an equitable doctrine under California law, but neither of these issues that were crucial to WordTek are present here. We have a direct infringement verdict that was unobjected to that was not raised in the 50A motion, and that verdict stands on substantial evidence that Mr. Chung himself directly infringed. His testimony about another actor, Esquire Distribution, amounts to simply alibi testimony that another actor was involved. It could have just as easily been another person to try to deflect liability from himself. With respect to marking... We met our pleading obligation because we pled Chung's awareness of the 284 patent. That's at Appendix 73, Paragraph 57. Chung admitted in his answer that he had notice of the issuance of the 284 patent. That's Appendix 133, Paragraph 57. Chung simply never carried his burden under Arctic Cat to articulate the products he believed were unmarked. To put this in perspective, Chung is moving for a new trial on failure to mark, but he never raised the failure to mark at trial. If you look at the cites in his reply at page 30, he's pointing to pretrial filings and post-trial motions to point to his supposed meeting of his obligation to point out unmarked products, but he points to nothing from trial. This is a fact issue on which he's looking for a new trial. He never brought it up. He mentioned it in closing argument, I believe, at the trial, but that can't meet his burden of production to point out unmarked products. Compliance with 287 is a question of fact. Arctic Cat tells us that, and, in fact, Arctic Cat reviews closely the evidence at trial that the alleged infringer put forth to meet its burden of production on this issue of identifying unmarked products. And it's a lot. There was expert testimony about products. There was a recitation of claim elements to show that those products, in fact, met the claims despite being unmarked. We have none of that. There was no trial evidence about marking whatsoever. And there was no other fact-finding that happened in the district court. Chung never moved for summary judgment. So he is not appealing any other fact-finding exercise other than the trial with respect to marking. I heard my beep there, so I will stop. Any more questions for counsel? No. Wallach, no. Okay. All right, then we'll hear some rebuttal. Mr. Chadwick. Thank you, Your Honor. Just a few points here. First, it was Levy's burden to establish infringement, and it was Levy's burden to establish the number of infringing units. So the fact that Chung points to his company, the fact that there is a sales record from his company is really their burden to overprove. They are trying to flip that to make it Chung's burden to establish this defense. But that burden has always rested squarely with Levy to prove infringement. As for the number of infringing units... They say that this issue, if its personal liability wasn't raised in Rule 50 motion, is that correct? They say that the alter ego issue was not raised, and that's correct. Well, the 50A does say that there was no proximate cause, and alter ego was not raised at trial. It was not in the pre-trial. They're not talking about alter ego liability. You're not talking about it. The district court didn't talk about it. We're talking about whether he was improperly held liable for acting in a personal capacity when he acted in a corporate capacity. In the 50A, he does say that there is no proximate cause to the damages related to Mr. Chung personally. What page is that on? That's Appendix 328. Okay. Okay, proceed with whatever else you need to tell us in rebuttal. As for the dates, the only evidence of record is one that shows all sales made of the accused products and one that shows post-patent issuance sales of the accused product. And tangentially, this is from Esquire and not Chung. The jury is not free to make unfounded assumptions about the timing of the sales in the first page, especially because the only other evidence of record is the second page, which squarely puts 8,600 post-issuance. They are not free to make assumptions because, as Lubbe admits, there was no other testimony of that. They did not meet their burden as to 36,000 sales because there's no other testimony or evidence in the record. And as for the jury instruction, Chung did stipulate to an instruction regarding him as an individual because that matched the claim that was brought at trial. That does not stipulate to liability, of course. They still have the burden to prove his liability, and if Lubbe chose not to bring a case against Esquire, this was their case, this was their choosing to go after him personally, and they have not put enough evidence in the record to support a jury verdict or to support the district court's decisions on that issue. And with that, if there's no more questions, I will... This is Judge Wallach. Your last statement is utterly confusing or at least lacking in any merit that I can see. If Chung stipulated to the jury determining whether or not he had personal liability, how is it that you're saying he didn't? I'm saying he was agreeing to the statement of law in the instruction. He is not agreeing that they met their burden of proof as to that claim. But the jury could find that based on your stipulation, right? Okay. The jury is entitled to find if there was evidence in the record. Okay. But you didn't stipulate... What's the stipulation that we're talking about here? In jury instruction number five... Oh, excuse me. In the jury instructions, when it's defining what infringement that the jury should be seeking, it says whether or not Mr. Chung, as an individual, is liable for patented infringement. Okay, but you didn't stipulate that he was liable. No, no. It's just that that's what the jury wants to determine. Yes. Okay. Any more questions? No. Okay. Thanks to counsel. The case is taken under submission.